Guido Saveri (SBN 22349)
guido@saveri.com
R. Alexander Saveri (SBN 173102)
rick@saveri.com
**SAVERI & SAVERI INC.**
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

Joseph M. Alioto (SBN 42680)
esexton@aliotolaw.com
**ALIOTO LAW FIRM**
555 California Street, Suite 3160
San Francisco, California 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200

Gilmur R. Murray (SBN 111856)
gmurray@murrayhowardlaw.com
Derek G. Howard (SBN 118082)
dhoward@murrayhowardlaw.com
**MURRAY & HOWARD, LLP**
436 14th Street, Suite 1413
Oakland, California 94612
Telephone: (510) 444-2660
Facsimile: (510) 444-2522

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINKLER WOODS, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MATSON NAVIGATION CO., INC.; ALEXANDER & BALDWIN, INC. HORIZON LINES, LLC, and HORIZON LINES, INC.<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**FOR VIOLATION OF SHERMAN ACT, 15 U.S.C. §1**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. Plaintiff Winkler Woods, LLC ("Plaintiff"), brings this action on behalf of itself and a plaintiff class consisting of all persons and entities who, like Plaintiff, purchased domestic ocean shipping services between the Continental United States and the State of Hawaii (the "Class") beginning no later than July 1, 2004 (the "Class Period"). Defendants are ocean shipping companies and their affiliates who have frequently met and conferred about fixing and stabilizing prices. Defendants conspired to and did sell domestic ocean cargo shipping services between the Continental United States and Hawaii ("Hawaiian Ocean Shipping") to Plaintiff and the Class at artificially inflated prices in violation of the federal antitrust laws. As a result of Defendants' agreement to fix and raise prices of Hawaiian Ocean Shipping and related unlawful conduct, Plaintiff and the Class have been damaged in their business and property by paying prices for Hawaiian Ocean Shipping substantially in excess of the prices that would have prevailed in a competitive market, absent Defendants' unlawful conspiracy to fix, raise, maintain, and stabilize said prices.

## II. JURISDICTION AND VENUE

2. This complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and recover treble damages and the costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by the Plaintiff and the members of the Class for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. This Court accordingly has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 (a), Sections 4 and 16 of the Clayton Act, and 15 U.S.C. §§ 15, 22 and 26. Defendants' unlawful anti-competitive activities were intended to and did have a substantial and reasonably foreseeable effect on interstate commerce.

3. This Court has *in personam* jurisdiction over the Defendants, and each of them, because, *inter alia*, each such Defendant engaged in an illegal price fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing, located in or doing business in the Northern District of California and throughout the United States.

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

4. Venue is properly laid in this district under 15 U.S.C. §§ 15, 22 and 26 and 28 U.S.C. § 1391 (b) and (c), because, during the Class Period, one of more of the Defendants transacted business, maintained offices, was found, or had agents within this district; and because a substantial part of the events giving rise to Plaintiff's claim occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district. No other forum would be more convenient for the parties and witnesses to litigate this case.

### III. PARTIES

#### A. Plaintiff

5. Plaintiff is a Hawaiian LLC with its principal place of business in Kurtistown, Hawaii. During the Class Period, Plaintiff purchased Hawaiian Ocean Shipping from Defendants, and paid fuel surcharges thereon, and suffered direct pecuniary injury and damages as a result of the antitrust violations alleged herein.

#### B. Defendants

6. Defendant **Matson Navigation Company, Inc.** ("Matson") is a Hawaii corporation with its principal place of business in Oakland, California. Matson controls approximately two thirds of Hawaiian Ocean Shipping.

7. Defendant **Alexander & Baldwin, Inc.**, ("Alexander & Baldwin") is a Hawaii corporation with its principal place of business in Honolulu, Hawaii. Matson is its wholly owned subsidiary. During the Class Period, Alexander & Baldwin undertook substantial business in this district, including Hawaiian Ocean Shipping.

8. Defendant **Horizon Lines, LLC**, is a Delaware corporation with its principal place of business in Charlotte, North Carolina. It controls approximately one third of Hawaiian Ocean Shipping and maintains sales and terminal operations in Oakland, California. Prior to 2004, Horizon was known as CSX Lines.

9. Defendant **Horizon Lines, Inc.** is a publicly traded Delaware corporation with its principal place of business in Charlotte, North Carolina. It has participated in substantial business dealings in this district including sale of Hawaiian Ocean Shipping. It is the holding company for

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

Horizon Lines LLC, and other subsidiaries. Horizon Lines, Inc. and Horizon Lines, LLC, are referred to collectively as "Horizon."

### C. Unnamed Co-Conspirators and Agents

10. On information and belief, certain other persons, corporations and other entities conspired with Defendants in the antitrust violations alleged herein and have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

11. At all relevant times, Defendants' unlawful acts were authorized, ordered or performed by their directors, officers, managing agents, employees or other authorized representatives. Plaintiff is informed and believes, and thereon alleges, that each and every Defendant was and is the agent of each of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants. Defendants, and each of them, have participated as members of the conspiracy or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

### IV. CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action on its own behalf and as a class action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All individuals or entities (excluding Defendants, and their parents, predecessors, subsidiaries, affiliates, and their agents and co-conspirators, as well as governmental entities) who purchased Hawaiian Ocean Shipping directly from any of the Defendants and their co-conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period from four years before the filing of this Complaint to the present.

13. Class members are sufficiently numerous and geographically dispersed so that joinder of all Class members is impracticable.

14. There are questions of law or fact common to the Class concerning, *inter alia*, the alleged conspiracy and the injury resulting therefrom, including:

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

3
**CLASS ACTION COMPLAINT**

      a.      Whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain, and/or stabilize prices of Hawaiian Ocean Shipping and/or engaged in market allocation or other related anticompetitive activities;

      b.      The identity of the conspirators;

      c.      The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

      d.      Whether the alleged conspiracy violated Section 1 of the Sherman Act;

      e.      Whether the conduct of Defendants, as alleged in this Complaint, caused injury to the businesses or property of Plaintiff and the other members of the Class;

      f.      The effect of Defendants' conspiracy on the price and related terms of Hawaiian Ocean Shipping; and

      g.      The appropriate measure and nature of the damages sustained by Plaintiff and other members of the Class.

15. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class members. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of Hawaiian Ocean Shipping and sustained direct financial injury as a result of Defendants' unlawful conduct. Plaintiff has retained and is represented by counsel that is competent and experienced in the prosecution of antitrust and class action litigation.

16. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

17. A class action is superior to any other alternatives, if any, for the fair and efficient adjudication of this controversy. Class treatment will permit the effective prosecution of relatively small claims of many class members that otherwise could not practically be litigated and will prevent inconsistent or varying adjudications that might result from prosecution of individual actions.

## V. **THE ILLEGAL CONSPIRACY**

18. The Hawaiian Ocean Shipping market has characteristics that facilitate unlawful collusion and the artificial fixing, raising and stabilization of prices by the Defendants.

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

4
CLASS ACTION COMPLAINT

19. The market is highly concentrated. Defendants Matson and Horizon and their affiliates control approximately 96 percent of all of Hawaiian Ocean Shipping (and 100 percent of container shipping) with only a very small percentage of cargoes carried by small specialized barge and auto carrier lines. Thus, the only principal competitors in the Hawaiian Ocean Shipping are the Defendants Matson and Horizon, making the market effectively a duopoly.

20. Hawaiian Ocean Shipping is a service that is fungible because almost all such shipping today is containerized and any container vessel can readily substitute for any other in carrying such cargo containers. The same is true for the much lesser amount of non-containerized cargo, such as automobiles. Hawaiian Ocean Shipping is a homogenous service sold by shipping lines, including Defendants, to cargo shipping customers, including Plaintiff and the members of the Class, primarily based on price.

21. The Hawaiian Ocean Shipping market between the Continental United States and Hawaii is not only highly concentrated, but there exist substantial barriers to entry in this market. These barriers to entry include very high capital costs, limited port space and restrictions imposed by the Jones Act, 26 U.S.C. §§ 100 *et seq*, prohibiting foreign shipping companies from competing in the Hawaiian Ocean Shipping (or other domestic shipping). These barriers insulate Defendants from new competition and facilitate the unlawful raising of prices above the competitive level.

22. In addition, the Defendants engage in trade association activities which facilitate collusion, including the Maritime Cabotage Task Force ("MCTF"), a lobbying group whose goal is to oppose the opening of the market to potential competitors. Executives of both Matson and Horizon are members of the Board of MCTF and through MCTF and other means have developed close working relationships. Defendants also have easy access to market and industry data that enables them to monitor and enforce compliance with the illegal conspiracy.

23. In fact, executives of Matson have met with executives of Horizon and discussed increasing prices charged for Hawaiian Ocean Shipping.

### A. Defendants' Concerted Fuel Surcharges

24. Beginning no later than 1999, Defendants agreed to fix and raise prices for Hawaiian Ocean Shipping, Pursuant to this agreement, Defendants agreed to act in concert in demanding and

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

5
**CLASS ACTION COMPLAINT**

instituting purported fuel surcharges—which in reality were instituted not merely to recover increases in fuel costs, but to fix and raise prices and defendants' profits. Defendants agreed to implement increased and uniform fuel surcharges, by having Matson announce an increased surcharge, with Horizon promptly following. Pursuant to his Agreement, defendants implemented the following increased and uniform fuel surcharges:

25. January 1, 1999. Neither Matson nor Horizon charged its customers a fuel surcharge.

26. October 11, 1999.  Matson imposed a fuel surcharge of 1.75 percent of revenue. Within 10 days Horizon matched this fuels surcharge.

27. February 20, 2000. Matson increased its fuel surcharge to 2.25 percent. Within 10 days Horizon matched this fuels surcharge.

28. April 2, 2000.  Matson increased its fuel surcharge to 3.25 percent. Within 10 days Horizon matched this fuels surcharge.

29. October 15, 2000. Matson increased its fuel surcharge to 4.25 percent. Within 10 days Horizon matched this fuels surcharge.

30. November 25, 2001. Matson decreased its fuel surcharge to 3.25 percent. Within 10 days Horizon matched this fuels surcharge.

31. May 5, 2002. Matson increased its fuel surcharge to 4.75 percent. Within 10 days Horizon matched this fuels surcharge.

32. October 20, 2002.  Matson increased its fuel surcharge to 6.00 percent. Within 10 days Horizon matched this fuels surcharge.

33. March 3, 2003. Matson increased its fuel surcharge to 7.50 percent.  Within 10 days Horizon matched this fuels surcharge.

34. May 4, 2003. Matson increased its fuel surcharge to 8.00 percent.  Within 10 days Horizon matched this fuels surcharge.

35. June 21, 2004. Matson increased its fuel surcharge to 8.80 percent. Within 10 days Horizon matched this fuels surcharge.

36. October 18, 2004.  Matson increased its fuel surcharge to 9.20 percent. Within 10 days Horizon matched this fuels surcharge.

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA  94612
Tel. (510) 444-2660
Fax (510) 444-2522

6
**CLASS ACTION COMPLAINT**

37. April 18, 2005. Matson increased its fuel surcharge to 10.50 percents. Within 10 days Horizon matched this fuels surcharge.

38. July 3, 2005. Matson increased its fuel surcharge to 11.50 percent. Within 10 days Horizon matched this fuels surcharge.

39. October 2, 2005. Matson increased its fuel surcharge to 13.00 percents. Within 10 days Horizon matched this fuels surcharge.

40. January 1, 2006. Matson increased its fuel surcharge to 15.00 percent. Within 10 days Horizon matched this fuels surcharge.

41. April 2, 2006. Matson increased its fuel surcharge to 18.50 percent. Within 10 days Horizon matched this fuels surcharge.

42. June 4, 2005. Matson increased its fuel surcharge to 21.25 percent. Within 10 days Horizon matched this fuels surcharge.

43. October 1, 2006. Matson decreased its fuel surcharge to 19.75 percent. Within 10 days Horizon matched this fuels surcharge.

44. Matson and Horizon acted in lockstep in other ways as well. For example, fuel surcharges were previously adjusted quarterly. In the spring of 2006, Matson announced that it would make surcharge changes whenever it deemed it necessary, a significant change in a policy that had lasted for years. Eleven days later, Horizon also changed its longstanding policy to make surcharge changes "in a more timely manner."

45. This history of lockstep, identical fuel surcharges makes no legitimate economic sense. Matson and Horizon publicly attempt to justify the fuel surcharges by claiming that they are necessary to defray increased fuel costs. But, even assuming a rise in the price of fuel for both carriers, in a free market this would not result in <u>lockstep</u>, <u>identical</u> increases in fuel surcharges <u>as a percentage of revenue.</u> The effective costs of fuel as a percentage of revenue are not the same, because, for example, the carriers use different technologies (e.g. different ships with different types of engines and fuel efficiencies), different routes, different operations, carry different cargoes, employ different fuel hedging strategies, etc. There may also be different allocations of fuel expense between the carriers and third parties. Thus, it is impossible for the cost allocation of fuel cost

**MURRAY & HOWARD, LLP**
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

7
**CLASS ACTION COMPLAINT**

increases to be exactly the same percentage of revenues for both carriers in both trades. In other words, the two shipping lines charged identical fuel surcharge costs for years regardless of whether it was a response to cost increases or other legitimate economic factors.

46. In fact, the lockstep identical fuel surcharge increases were the result of an illegal agreement between the two competitors. Defendants implemented their agreement by secretly exchanging information and secretly agreeing to fix the fuel surcharge at artificially high and identical levels.

47. But for Defendants' illegal agreement, they would have been unable to increase their fuel surcharges to the extent they did. Defendants earned very large supra-competitive profits from their illegal conspiracy to increase fuel surcharges to identical and unjustified levels.

### B. Defendants' Agreement to Share Capacity and Thereby Control Excess Capacity and Remove Pressures to Compete on Price

48. Defendants have for years agreed to share capacity on each other's ships, agreeing to ship each other's containers on a regular basis, charging each other much less than they charge their actual shipper customers. Without this collusion and capacity sharing agreement, Defendants would have been forced to add additional ships to their own fleets, thereby increasing industry capacity and placing downward pressure on price and strong incentives to reduce prices to fill unused ship capacity.

49. The purpose and effect of this capacity sharing agreement is to reduce the capacity of shipping services on the Continental United States-Hawaii routes and thus maintain higher prices for the shipment of cargo on those routes.

### C. Defendants' Elimination of Competition From Freight Forwarders by Eliminating Volume Price Discounts

50. Freight forwarders are in the business of brokering and organizing the transport of products, commodities and other goods by various modes of transport including by ship on behalf of primary shippers. Freight forwarders are both customers and competitors of carriers. In their role as customers of carriers, freight forwarders purchase space on the carriers' ships which they sell to primary shippers. In their role as competitors, freight forwarders and carriers both sell Full

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

8
CLASS ACTION COMPLAINT

Container Load ("FCL") services (i.e. shipping services for loads which fill an entire shipping container) directly to primary shippers for shipments along the Continental United States-Hawaii routes. Thus, in the market for FCL services along the Continental United States-Hawaii routes, freight forwarders are in competition with Matson and Horizon.

51. Beginning in or about 1997, Defendants entered into a conspiracy with the purpose and effect of eliminating competition from freight forwarders in the market for FCL services along the Continental United States-Hawaii routes. Specifically, Defendants agreed to eliminate volume price discounts offered to freight forwarders which Defendants had previously offered, generally, to high-volume shippers, including freight forwarders. Instead, freight forwarders were required to pay retail rates regardless of the amount of space they purchased. Other non-freight forwarder customers of Defendants continued to be offered volume pricing discounts by Defendants.

52. Without volume pricing, freight forwarders were unable to compete with carriers in the market for FCL shipments. Prior to this conspiracy, freight forwarders were able to effectively acquire FCL services at a bulk wholesale price and then resell to consumers at the retail price, thus creating competition in the market for such services. Once the freight forwarders were denied volume discounts pursuant to Defendants' conspiracy, they were unable to sell FCL services at a price sufficient to cover their costs, much less to earn a reasonable profit.

53. The purpose and effect of this conspiracy has been to eliminate competition from freight forwarders in the market for FCL services, and thereby facilitate the Defendants' illegal conspiracy and anti-competitive pricing..

### D. Fraudulent Concealment

54. Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Class.

55. The members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced. Nor could Plaintiff and the members of the Class have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

9
**CLASS ACTION COMPLAINT**

fraudulently concealed their activities through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

56.  Defendants engaged in a successful, illegal price-fixing conspiracy with respect to fuel surcharges and capacity and a successful, illegal conspiracy to eliminate competition in the market for FCL services along the Continental United States-Hawaii routes, which they affirmatively concealed, in at least the following respects:

   a.  By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal schemes;

   b.  By engaging in secret meetings and telephone calls in order to further their illicit Hawaiian Ocean Shipping, capacity discouraging and fuel surcharges cartel, and/or

   c.  By giving false and pretextual reasons for their pricing for Hawaiian Ocean Shipping and fuel surcharges thereon, and their increases, during the relevant period and by describing such pricing and increases falsely as being the result of external costs rather than collusion.

57.  As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and the members of the Class.

### F. Injury to Plaintiff and the Class

58.  During the Class Period, Plaintiff and the members of the Class, because of and as a proximate result of Defendants' antitrust violations, paid artificially inflated prices they would not have paid absent such violations. As a result, Plaintiff and the members of the Class it seeks to represent have been injured and damaged in their business and property in an amount to be determined according to proof.

### VI.  CLAIM FOR VIOLATION OF SHERMAN ACT, 15 U.S.C. § 1

59.  Plaintiff incorporates and realleges, as though fully set forth herein, all of the allegations contained in the preceding paragraphs of this Complaint.

60.  Defendants and their co-conspirators, have engaged in a continuing contract, combination, or conspiracy in unreasonable restraint of trade or commerce among the several states

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

10
CLASS ACTION COMPLAINT

to artificially raise, fix, maintain, and/or stabilize prices for Hawaiian Ocean Shipping, to limit capacity and to exclude actual and potential competitors, all as more fully alleged above.

61. The purpose and effect of Defendants' conduct was to artificially raise and maintain prices paid by Plaintiff and the Class for Hawaiian Ocean Shipping above the competitive level. Members of the Class have been deprived of the benefit of free and open competition, and have been injured in their business and property in that they have paid more for Hawaiian Ocean Shipping services and intermodal services that they would have paid without the Defendants' and their co-conspirators' price-fixing and boycott activities.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that:

1. The Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

2. The Court adjudge and decree that the contracts, combinations and conspiracies alleged herein are a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

3. Judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class for damages as allowed by law as determined to have been sustained by them;

4. Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining, or renewing the combinations, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or effect in restraining competition;

5. The Court award Plaintiff and the Class attorneys' fees and costs, and pre-judgment and post-judgment interest as permitted by law, and

6. The Court award Plaintiff and the Class such other and further relief as may be necessary and appropriate.

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

11
**CLASS ACTION COMPLAINT**

Dated: July 1, 2008

**SAVERI & SAVERI INC.**
   Guido Saveri
   R. Alexander Saveri

**MURRAY & HOWARD, LLP**
   Gilmur R. Murray
   Derek G. Howard

**ALIOTO LAW FIRM**
   Joseph M. Alioto
   Theresa D. Moore

By: _____
   GILMUR R. MURRAY
   *Attorneys for Plaintiff and the Class*

MURRAY & HOWARD, LLP
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

12
**CLASS ACTION COMPLAINT**

## VIII. JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

Dated:   July 1, 2008

**SAVERI & SAVERI INC.**
  Guido Saveri
  R. Alexander Saveri

**MURRAY & HOWARD, LLP**
  Gilmur R. Murray
  Derek G. Howard

**ALIOTO LAW FIRM**
  Joseph M. Alioto
  Theresa D. Moore

By: _____
  GILMUR R. MURRAY
  *Attorneys for Plaintiff and the Class*

**MURRAY & HOWARD, LLP**
436 14th Street, Suite 1413
Oakland, CA 94612
Tel. (510) 444-2660
Fax (510) 444-2522

13
**CLASS ACTION COMPLAINT**